IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> MIGUEL RAMIREZ-RODRIGUEZ, <br><br> *Defendant.* | Criminal No. 2:25-cr-215 - 1 <br><br> Hon. William S. Stickman IV |

**<u>MEMORANDUM OPINION</u>**

WILLIAM S. STICKMAN IV, United States District Judge

A federal grand jury returned a two-count indictment against Defendant Miguel Ramirez-Rodriguez ("Ramirez-Rodriguez") charging Ramirez-Rodriguez with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 3). The charges carry mandatory minimum sentences of ten and five years, respectively. (ECF No. 4). They stem from a traffic stop on the Pennsylvania Turnpike wherein Ramirez-Rodriguez, a resident of Orlando, Florida, was found to be driving a car with a hidden compartment containing nineteen kilograms of cocaine, a loaded firearm, and a "token" for ten thousand dollars.[1] (ECF Nos. 3 and 31). As a convicted felon, Ramirez-Rodriguez is not permitted to possess a firearm. (ECF Nos. 20 and 38).

Following a detention hearing on September 5, 2025, Magistrate Judge Christopher B. Brown denied the Government's request that Ramirez-Rodriguez be detained pending trial and

---

[1] A "token," such as a photograph of a specific dollar bill with a monetary amount written upon it, is used by drug trafficking organizations to confirm the identity of the intended recipient of drugs being transported.

entered an order setting his conditions of release. (ECF Nos. 11, 23, 26, and 27). The Government requested a stay of the order setting conditions of release in order to file an appeal, which Magistrate Judge Brown granted. The matter was stayed through September 8, 2025 at 5:00 PM. (ECF No. 23-27). On September 8, 2025, the Government filed a Motion for Revocation of Order of Pretrial Release and for Continued Stay of Release Order. (ECF No. 28). The Court stayed the Appearance Bond (ECF No. 26) and Order Setting Conditions of Release (ECF No. 27) that same day. (ECF No. 29). After production of the detention hearing transcript on September 10, 2025 (ECF No. 31), the Government filed a brief in support of its motion seeking *de novo* review of Magistrate Judge Brown's order of pretrial release. (ECF No. 32).

The Court has undertaken a *de novo* review of the transcript of the September 5, 2025, detention hearing, the parties' arguments in their respective pleadings (ECF Nos. 32 and 34), and the evidence of record.[2] The Court also conducted a detention hearing on October 22, 2025. (ECF No. 37). At the detention hearing before the Court, neither the Government nor Ramirez-Rodriguez offered any witnesses. The Government moved three exhibits into evidence without objection: an arrest report from the Casselberry, Florida police department (ECF No. 32-1); the transcript of the September 5, 2025, hearing (ECF No 31); and the pretrial services report (ECF No. 38). Ramirez-Rodriguez did not offer any additional exhibits.

At the detention hearing before the undersigned, defense counsel made a clarification to the prior testimony of Ramirez-Rodriguez's mother at the September 5, 2025, hearing before Magistrate Judge Brown. That clarification was that, due to translation issues, it was

---

[2] A district judge reviews the decision of a magistrate judge granting or denying bail *de novo*. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). It retains the discretion to make its determination after reviewing the record developed before the magistrate judge or to accept additional evidence from the parties and rule on an expanded record. *See* 18 U.S.C. § 3142(f)(2)(B).

miscommunicated to Magistrate Judge Brown that Ms. Ramirez is married and lives with someone. As such, to the extent that she could be a third-party custodian, there would be no one home while she is working. This clarification is at odds with representations that Ms. Ramirez's husband would be available to monitor Ramirez-Rodriguez while she is working.

After an independent review of the record and consideration of the parties' arguments, the Court respectfully reached a different conclusion than Magistrate Judge Brown. Based on the clarification of Ramirez-Rodriguez's mother's living situation, the facts of record are significantly different than those before Magistrate Judge Brown when he rendered his decision. Therefore, for the following reasons, the Court will vacate the orders setting bond and conditions of release. (ECF Nos. 26 and 27). Ramirez-Rodriguez will be detained pending trial.

## I.  STANDARD OF REVIEW

For defendants charged with certain offenses enumerated in 18 U.S.C. § 3142(e)(3)(E), a rebuttable presumption arises that no condition or combination of conditions of release will assure the appearance of the person or the safety of the community. Thus, the Bail Reform Act sets a presumption in favor of detention. In this case, the relevant offenses are a violation of the Controlled Substances Act, which is punishable by a term of imprisonment of ten years or more, and a violation of 18 U.S.C. § 924(c)(1)(A)(i). *See* 18 U.S.C. § 3142(e)(3)(E). The grand jury returned a two-count indictment on August 19, 2025, charging Ramirez-Rodriguez with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 3). Thus, a rebuttable presumption exists that no condition or combination of conditions of release will reasonably assure the appearance of Ramirez-Rodriguez or reasonably assure the safety of the community from further crimes

committed by him. *See* 18 U.S.C. § 3142(e)(3). The parties do not dispute this rebuttable presumption. (ECF Nos. 31-32, and 34).

To rebut this initial presumption, the burden is on Ramirez-Rodriguez to produce credible evidence that he will appear as directed and not present a threat to the community. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). Even if he satisfies his initial burden of production to rebut the presumption against release, it does not completely eliminate the presumption favoring detention from further consideration; rather, it remains a factor to be considered amongst those weighed by the Court. However, rebuttal of the initial presumption against detention shifts the burden to the Government to demonstrate by clear and convincing evidence that Ramirez-Rodriguez is a danger to the community, and/or by the lesser standard of a preponderance of the evidence, that he is a flight risk. *See United States v. Perry*, 788 F.2d 100, 115 (3rd Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness.").

In making its determination on whether there are conditions or a combination of conditions of release that will reasonably assure the appearance of Ramirez-Rodriguez and the safety of the community, the Court must weigh the evidence in light of the four factors set forth in 18 U.S.C. § 3142(g). The factors are: (1) the nature and seriousness of the offenses charged; (2) the weight of the evidence against Ramirez-Rodriguez; (3) the history and characteristics of Ramirez-Rodriguez; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Ramirez-Rodriguez's release. 18 U.S.C. § 3142(g).

II.   ANALYSIS

A. **Ramirez-Rodriguez has not rebutted the presumption of detention.**

The Court must make the initial determination of whether Ramirez-Rodriguez has proffered sufficient evidence to rebut the initial presumption against pretrial release. Ramirez-Rodriguez is charged with two crimes that carry the burden of detention: intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 3).

The presumption of pretrial detention may be rebutted if the defendant can produce "some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *Carbone*, 793 F.2d at 560. The evidentiary burden of rebutting the presumption has been interpreted as being "relatively light." *United States v. Griffin*, No. CRIM 07-02 ERIE, 2007 WL 510140, *2 (W.D. Pa. Feb. 12, 2007). Although the burden is relatively light, it is still a burden, and the evidence presented to rebut the presumption must credibly assure the court that the defendant does not pose a risk of flight or danger to the community.

Ramirez-Rodriguez argues that the following three factors constitute sufficient evidence to rebut the presumption of detention: 1) his ties to the community in Orlando, Florida; 2) the fact that his mother is willing to serve as a third-party custodian; and 3) his criminal history does not include violence or flight from authorities. The Court will address each in turn.

First, the Court acknowledges that Ramirez-Rodriguez has ties to the Orlando, Florida community. He has a brother and a non-custodial child who live there, and prior to his arrest, he resided in Orlando with his mother. Ramirez-Rodriguez also has ties to Puerto Rico, which is where his father and other non-custodial child live. Beyond the presence of family, Ramirez-

Rodriguez has not pointed to any current, on-going community ties. While he has worked in the Orlando area in the past, he has no record of employment since January 1, 2024. The Court holds that this evidence of community ties is not enough to rebut the presumption of detention. The only significant ties are those of the presence of family, but those family ties existed during Ramirez-Rodriguez's alleged criminal conduct. It does not, as he argues, support a finding that he does not present a flight risk or pose a danger to the community.

As to the willingness of Ms. Ramirez to serve as a third-party custodian, the Court first notes that the facts as clarified at the October 22, 2025, hearing are different from those presented to Magistrate Judge Brown. At the initial hearing, Ms. Ramirez did not testify, but rather, information was presented about her by proffer of counsel. Ramirez-Rodriguez's attorney represented that "She [Ms. Ramirez] would be comfortable with her son living at her home with her and her husband." (ECF No. 31, p 23). When the Government inquired about Ms. Ramirez's work schedule, the exchange between Ramirez-Rodriguez's attorney and Magistrate Judge Brown was as follows:

> MS. JORDAN: [T]he question I had was mother's work hours. And I've been informed those are 7 to 3.
>
> THE COURT: Okay.
>
> MS. OLAIYA: I apologize, Your Honor. 7:30 to 3:00 p.m. are the mother's work hours. My apology.
>
> THE COURT: Monday through Friday?
>
> MS. OLAIYA: Correct, Your Honor.
>
> THE COURT: Okay. And then her husband's there.

(ECF No. 31, p. 25). There is no question that at the hearing before Magistrate Judge Brown, it was represented that Ms. Ramirez would be able to supervise Ramirez-Rodriguez as a third-party

6

custodian and that, while she is at work, her husband would be there. This is not accurate. As counsel clarified at the October 22, 2025, hearing, the representation was based on a misunderstanding. In truth, Ms. Ramirez is not married and does not live with her current paramour. Thus, Ramirez-Rodriguez would be unattended and unsupervised by Ms. Ramirez while she is working, which is approximately forty hours per week.

The Court does not believe that the willingness of Ms. Ramirez to serve as a third-party custodian is sufficient evidence to rebut the presumption of detention based on past practice. Ramirez-Rodriguez was living with his mother at the time he committed the acts that form the basis of this prosecution. It was proffered that Ms. Ramirez represented that the reason that Ramirez-Rodriguez was in Pennsylvania was to visit a love interest. (ECF No. 31, p. 23). However, as the Government represents, there is credible evidence demonstrating that he was merely passing through Pennsylvania on a journey from New Jersey to Ohio. This indicates either that Ms. Ramirez's representation was dishonest or that she had no idea what her son was doing. Her willingness to return to the status quo living arrangements is not credible evidence that Ramirez-Rodriguez does not pose a flight risk or a danger to the community.

Finally, the Court also rejects the contention that Ramirez-Rodriguez's criminal history constitutes credible evidence that he does not pose a flight risk or danger to the community. While the Court recognizes that he does not have a history of flight from authorities, the Court notes that he has multiple felony convictions, including a prior drug conviction. It is significant to the Court that Ramirez-Rodriquez appears to have committed the drug crime (offense date: 11/13/2016) while on bond for the charges relating to his fraud/counterfeit felonies (sentence date: 12/09/2016). (ECF No. 38). In 2024, Ramirez-Rodriguez was charged with driving an unregistered vehicle while having a suspended license. The arrest report indicates that it was the

second time he was charged with driving with a suspended license. (ECF No. 32-1). Although the Court credits the representation that Ramirez-Rodriguez does not have a violent history, the Court finds that his non-violent criminal history is not sufficient evidence to rebut the presumption of detention. If anything, as a repeat felon, it shows a propensity to commit crimes, including drug-related crimes. Moreover, the Court notes that the prior drug-related crime was committed while other felony charges were pending.

Although the evidence presented by Ramirez-Rodriguez is certainly probative of his general history and characteristics, rebuttal of the presumption of dangerousness requires a showing that Ramirez-Rodriguez's criminality is a thing of the past. *See e.g., United States v. Perry*, 788 F.2d 100, 114) (3d Cir. 1986) ("the dangerousness determination involves a prediction of the detainee's likely future behavior. Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions. By its very nature such a prediction is a far more speculative and difficult undertaking than the reconstruction of past events."); *United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, *5 (M.D. Pa. April 23, 2009) (noting that "rebuttal of the presumption of dangerousness requires a showing that defendant's criminality is a thing of the past."); *United States v. Terron*, No. 3:18-CR-00413, 2020 WL 2404618, *7 (M.D. Pa. May 12, 2022) ("The record before the Court does not reflect that [the defendant] has respect for the law, personal reliability, or that his criminality is a thing of the past."); *United States v. Williams*, No. 3:18-CR-00153, 2020 WL 209318, *4 (M.D. Pa. May 1, 2020) ("The record before the Court does not reflect that [the defendant] has a respect for the law, personal reliability, or that his criminality is a thing of the past."); *United States v. McKnight*, No. 2:20-cr-266-5, 2021 WL 615211, *5 (W.D. Pa. Feb. 17, 2021) (finding that evidence proffered "does not suggest in any way that his 'criminality is a thing of the past,'"

and noting that defendant committed the "alleged crimes while residing in the same home, with the same family members, while filling the same caregiver role, and with the same medical and health conditions that he currently has. He has [ ] provided no evidence that would suggest that his criminal conduct was an aberration, or that something has changed to make him more personally reliable or have a respect for the law.").

As explained above, the evidence Ramirez-Rodriguez points to in favor of release does not rebut the presumption of detention.  Ramirez-Rodriguez is a repeat felon whose record includes a prior drug crime.  He is charged with serious drug and firearm crimes that each carry extensive mandatory minimum sentences.  He has no employment and, beyond relationships with his mother, brother, and non-custodial son, there is no evidence of any deep community ties.  As to his family ties, he allegedly committed the instant crimes while residing in the same residence with the same third-party custodian that he now suggests.

After consideration of the evidence and arguments of counsel, the Court concludes that the evidence presented by Ramirez-Rodriguez fails to rebut the initial presumption that no condition or combination of conditions of release would reasonably ensure the safety of the community.  Detention is mandated.

### B. Even if Ramirez-Rodriguez had rebutted the presumption of detention, no condition or combination of conditions would assure the safety of any other person or the community.

In the alternative, even if Ramirez-Rodriguez had rebutted the presumption, the Court's conclusion would be the same because the Government proved by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person or the community.

### *1) Nature and Circumstances of Offense Charged and Weight of the Evidence*

The nature of the crime charged weighs heavily against release. 18 U.S.C. § 3142(g)(1). Ramirez-Rodriguez is charged with serious drug and firearm offenses that each carry long mandatory minimum sentences. The nature of the charges leads the Court to conclude that he poses both a danger to the community and a risk of flight. Moreover, although there is a presumption of innocence, the weight of the evidence against Ramirez-Rodriguez is strong. 18 U.S.C. § 3142(g)(2). He was stopped while driving a car filled with drugs, a loaded gun, and had a token receipt on his personal telephone. Both the nature of the charges and the weight of the evidence in support of those charges weighs in favor of pretrial detention.

### *2) History and Characteristics of the Defendant*

Ramirez-Rodriguez is thirty years old. He was born in Puerto Rico but, until his arrest, resided with his mother in Orlando, Florida. In Orlando, he has a relationship with his mother, his brother, and a non-custodial son. Ramirez-Rodriguez maintains ties with Puerto Rico, where his father and another non-custodial son reside. He has a history of employment from 2019 through 2024. The Pretrial Services Report shows, however, that he has been unemployed since January 1, 2024. (ECF No. 38). He has no job to return to in Orlando and no legitimate income. The same report lists a negative cash flow of approximately $1,395.00 per month. His estimated net worth is also negative, approximately -$5,920.00. (*Id*.). With a negative net worth, no legitimate income, and monthly financial obligations, the Court is concerned that Ramirez-Rodriguez would be tempted to engage in criminal conduct, including drug trafficking, if released.

As to his criminal history, Ramirez-Rodriguez is a convicted felon. As explained above, he has 2016 felony convictions for fraud and "Pass Counterfeited." He also has a felony

conviction for drug possession and a misdemeanor conviction for "obstruct without violence" from 2017. It appears as though the actions underlying these convictions occurred while he was on bond for the 2016 convictions. In addition, Ramirez-Rodriguez was charged with driving an unregistered vehicle with a suspended license. (*Id.*). While his criminal history is not unusually extensive, it indicates a general disrespect for the law. The Court holds that this criminal history, on top of other personal characteristics of Ramirez-Rodriguez, indicates that he poses both a flight risk and, especially, an ongoing danger to the community.

### *3) Risk of Danger to the Community*

Finally, the Court must assess the risk that Ramirez-Rodriguez would pose to the community if released. 18 U.S.C. § 3142(g)(4). It is alleged that Ramirez-Rodriguez was involved in the interstate transportation of large quantities of narcotics—approximately 40 pounds of cocaine. The quantity of drugs, the manner in which they were stored (in a hidden compartment), and the possession of a token receipt point to involvement in large-scale narcotic trafficking. It is well-established that those who traffic in narcotics pose a real danger to the community. The danger associated with drug trafficking is only amplified by the associated possession of firearms. The Court concurs with the words of the Honorable Nora Barry Fischer:

> [D]istribution of Schedule II controlled substances like cocaine, have a "high potential for abuse," have "a currently accepted medical use in treatment in the United States" with "severe restrictions," but "abuse of the drug or other substances may lead to severe psychological or physical dependence." 21 U.S.C. § 812(b)(2). …. Hence, the high volume trafficking of these particular types of illegal narcotics presents considerable danger to the community.
>
> Of course, the utilization of firearms in furtherance of drug trafficking poses a significant threat of violence. *See e.g., United States v. Gemere Bey*, 2015 WL 7176340, at *4-5 (W.D. Pa. Nov. 13, 2015).

*United States v. Oliver*, No. 16-40, 2016 WL 1746853, at *8 (W.D. Pa. May 3, 2016). As the Honorable W. Scott Hardy observed:

11

> [The Court] agrees with others which have observed that drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of a dangerous, addictive drug such as cocaine as alleged to have occurred here. *See Bastianelli*, 2020 WL 1015269, at *8 ("Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs [ ]."); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("[V]iolence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs."). Distribution of Schedule II controlled substances like cocaine have a "high potential for abuse" and that abuse "may lead to severe psychological or physical dependence." *See Bastianelli*, 2018 WL 1015269, at *8 (citing 21 U.S.C. § 812(b)(2)(A), (C)). Accordingly, the high volume of cocaine allegedly trafficked in this case presents a considerable danger to the safety of the community.

*United States v. Egurrola-Vasquez,* No. 20-218, 2021 WL 185043, at *10 (W.D. Pa. Jan. 19, 2021) (citation omitted).

"Ultimately, consideration of this factor requires a court to "predict whether defendant will engage in drug trafficking if released pending trial." *Id.* at *10 (quoting *United States v. Bratcher*, 2014 WL 1371582, at *8 (W.D. Pa. Apr. 8, 2014) (citing *Perry*, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior.")). Further, the Court recognizes, as others have, that strict conditions of release, including conditions such as home confinement and electronic monitoring, cannot guarantee that a defendant will no longer engage in criminal activity. *See e.g.*, *United States v. Bastianelli*, No. 17-305, 2018 WL 1015269, at *8 (W.D. Pa. Feb. 22, 2018) (citing *United States v. Yarbough*, No. 2:14-cr-270-11, 2014 WL 7343839, *4 (W.D. Pa. Dec. 23, 2014) ("If released to home detention, nothing prevents Defendant from continuing to engage in illegal activity.")).

Ramirez-Rodriguez, a convicted felon with a prior drug conviction, is charged with trafficking large quantities of cocaine. This is inherently dangerous conduct. That danger was amplified by the presence of a loaded gun. The Court is required to predict whether he poses a risk of continued misconduct if he were to be released pending trial. The Court finds that this

12

factor weighs in favor of detention, especially when considered in conjunction with the other factors addressed above. As the Court has previously discussed, Ramirez-Rodriguez has no connection to this district. His only connection to the Orlando area is that his mother, brother, and non-custodial son reside there. He has no job and there is no indication that, beyond family, he has any deeper connection to the Orlando community. Even with Ms. Ramirez serving as a third-party custodian, it would merely return Ramirez-Rodriguez to the housing conditions from which he is accused of engaging in the instant criminal conduct. The Court is not satisfied that granting him release could be done in a manner that would ensure public safety. Ramirez-Rodriguez is a convicted felon who is accused of trafficking in large quantities of cocaine and of possessing a loaded gun in the process. The Court holds that there is clear and convincing evidence that Ramirez-Rodriguez would pose a threat to the community and a risk of flight. No combination of conditions will reasonably assure the safety of the community if Ramirez-Rodriguez remains on bond pending trial. The Court is convinced of his continuing dangerousness. Detention pending trial is appropriate.

### III. CONCLUSION

After consideration of the entire record and arguments of the parties, the Court concludes that Ramirez-Rodriguez failed to rebut the initial presumption that no condition or combination of conditions of release would reasonably ensure the safety of the community. This alone warrants detention. However, the Court's examination of the materials before it leads it to the conclusion that, even if Ramirez-Rodriguez had rebutted the presumption, the Government, by clear and convincing evidence, persuaded it that no condition or combination of conditions

would reasonably ensure the safety of the community. The Government's motion will be granted, and Ramirez-Rodriguez will be detained pending trial. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

__11/3/25_____
Date